# PHILLIPS PETROLEUM COMPANY v. ALVIN C. ROTH AND ANOTHER.[1]

May 20, 1932.

No. 28,798.

[1]Reported in 242 N. W. 629.

174

*Jay W. Smith, T. M. Thomson,* and *O'Brien, Horn & Stringer,* for appellant.

*Masek & Levy,* for respondents.

OLSEN, J.

Plaintiff appeals from the judgment.

Defendant Alvin C. Roth is herein referred to as the defendant. He owned and operated a service station, selling gasolene and oil for automobiles. Plaintiff is a corporation engaged in producing, distributing, and selling gasolene, oil, and petroleum products. It both owns and leases service stations for the sale of its products. By its agent, plaintiff negotiated with defendant for the purpose of having him handle and sell its gasolene and oil at his service station. According to defendant's testimony, it was orally agreed between them that defendant should so do; that plaintiff would furnish defendant with gasolene and oil for sale at his said station, and as compensation for handling and selling same he should receive a "spread" of four cents per gallon for gasolene so furnished. In other words, plaintiff was to furnish him gasolene at four cents per gallon less than the retail selling price. Defendant was to have the right to continue to handle and sell another brand of gasolene known as "Coltex," not handled by plaintiff. Defendant was to receive this four-cent allowance no matter how low the price of gasolene might go. The agreement was to be for the term of one year. It was understood that the agreement was to be made out in writing by plaintiff.

A few days thereafter plaintiff's agent came to defendant's home and presented for signature two written instruments. He stated to defendant that these instruments were the regular form for defendant to operate the station. Defendant did not read the instruments.

The agent read parts of them, providing for the amount of defendant's compensation, but did not read those parts differing from the oral agreement, herein later pointed out. Defendant did not know that such different terms had been included. He assumed and believed the contracts were the same as the prior verbal agreement or representations, and signed them.

One instrument was in the form of a lease by defendant to plaintiff of the service station in question for the term of one year. It contained no provision for the cancelation thereof by either party, except the usual provision as to the rent's ceasing in case the premises became unfit for occupancy by reason of fire, storm, or other cause. The rent provided therein was the nominal sum of ten cents per month, but in addition thereto an amount equal to one-half cent for each gallon of gasolene plaintiff should deliver for sale at said service station during said term. The lease, standing alone, did not obligate plaintiff to continue to operate the station.

The other instrument is called "Operator's Agreement," and provides that the defendant shall operate the station, but only at the will of the plaintiff; that plaintiff agrees to keep the station supplied with gasolene and oil; that defendant shall receive as compensation for operating the station three and one-half cents per gallon on gasolene delivered to him by plaintiff, to be deducted from the price at which such gasolene is furnished, the price to be the posted retail price fixed by plaintiff. This three and one-half cents per gallon, with the one-half cent per gallon named in the lease, makes up the four-cent "spread" before mentioned. The operator's agreement further provides that defendant shall dispense or sell no other gasolene or oil than that furnished by the plaintiff. It does not fix any time for the continuance or termination of the agreement, but gives plaintiff the right to terminate the agreement at will.

The defense, found established by the verdict of the jury, was that this written lease and operator's agreement were obtained by fraud and deceit. We are asked to hold that the evidence is insufficient to sustain the verdict and that plaintiff was and is entitled to judgment notwithstanding the verdict or to a new trial.

The deceit or fraud claimed is that plaintiff assumed and undertook to reduce the oral agreement to writing, presented the two instruments to defendant as being the same as the prior oral agreement, and concealed from defendant the fact that the written instruments contained terms materially different from the oral agreement; that defendant believed and relied upon the representations so made and was induced thereby to sign the instruments. Defendant did not receive any copy or duplicate of the instruments until shortly before this action was commenced.

After the instruments were signed defendant received a shipment of gasolene from plaintiff, which he sold to his customers and on which he was allowed by plaintiff the "spread" or profit of four cents per gallon. About a week thereafter plaintiff's agent informed him that his compensation had been cut one-half cent per gallon on gasolene. Defendant claimed that under his contract he was entitled to four cents per gallon. Trouble arose. Plaintiff then assumed to cancel the operator's agreement and to discharge defendant, but claimed the lease remained in force, and brought this action to oust the defendant from the service station. The jury found in defendant's favor.

In determining the question of whether there was fraud or deceit the jury had the right to take into consideration the provisions of the written instruments. Unreasonable provisions of the written instruments in such a case may be considered as having a tendency to show that defendant's statements as to what was actually agreed upon are more reasonable and probable. Here, according to defendant's testimony, he was to operate the service station for one year, have the right to handle other gasolene in addition to that furnished by plaintiff, and was to receive a "spread" or allowance of four cents per gallon on gasolene furnished by plaintiff. Under the written operator's agreement defendant could be discharged at any time, with or without cause, and could handle no gasolene other than that furnished by plaintiff. In that situation, if the lease remained in force, defendant would have to consent to any reduction plaintiff saw fit to make in his compensation or lose his

job. Again, as plaintiff was not obligated to continue to operate the station, it could, after discharging defendant, close the station and keep it closed for the year by paying defendant a rent of ten cents per month for a valuable property. The cases of Alfred Shrimpton & Sons, Ltd. v. Philbrick, 53 Minn. 366, 55 N. W. 551, and Providence Jewelry Co. v. Crowe, 108 Minn. 84, 121 N. W. 415; Id. 113 Minn. 209, 129 N. W. 224, sustain the jury's findings of deceit or fraud under similar circumstances. The evidence in our present case was sufficient to justify the jury in finding fraud or deceit.

█ Complaint is made of the refusal of the court to instruct the jury that the lease and operator's agreement were separate contracts, each complete in itself, each containing a separate consideration; that they were independent of each other; and that the termination of the operator's agreement would not affect the lease. Complaint is also made of the charge, as given, wherein the court charged:

"The lease and the operator's agreement * * * are in the eyes of the law one agreement, and are to be taken together as one agreement, and that fraud, as claimed by the defendants, would void the entire agreement, including the lease."

While the lease and agreement, considered separately, may each appear to be complete and independent contracts, when read together, in the light of the situation and circumstances shown, it is reasonably clear that they are not wholly separate and independent. There was only one transaction. The consideration for each, except the nominal ten cents per month rent in the lease, is a part of the four cents per gallon compensation to defendant for handling plaintiff's gasolene. That the termination of the operator's agreement would vitally affect the lease by permitting plaintiff to retain possession of the service station by the payment of the nominal rent of ten cents per month has already been referred to. Aside from that, there was, according to defendant's testimony, one single oral agreement; and if there was fraud or deceit in obtaining two written contracts to cover that one agreement, the fraud involved the entire transaction and would avoid both instruments. The

178

court correctly charged that if there was fraud, as claimed by defendant, it would avoid both the operator's agreement and the lease. What else was said by the court, or refused, as to the agreements being or not being separate and independent contracts, was not prejudicial.

■   Where after a verbal agreement one of the parties undertakes to prepare the written contract and presents it to the other for signature, the presentation of the written instrument for signature is a representation that it is the same in effect as their verbal agreement.   If the representation so made is false and fraudulent, the one induced thereby to sign the written contract may defend against the enforcement thereof by the other, even though he was negligent in signing same without reading it.   Alfred Shrimpton & Sons, Ltd. v. Philbrick, 53 Minn. 366, 55 N. W. 551; Providence Jewelry Co. v. Crowe, 113 Minn. 209, 129 N. W. 224; National C. R. Co. v. Merrigan, 148 Minn. 270, 181 N. W. 585; 3 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3832, and cases cited in note 77.

This disposes of the assignments of error not already considered.

We have not overlooked the evidence on behalf of plaintiff, which if accepted by the jury might lead to a different result; but are to view the evidence on this appeal in the most favorable light for defendant.

Judgment affirmed.